IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ROBIN MYERS,                          )
                                      )
            Petitioner,               )
                                      )
vs.                                   )    Case No. 5:04-CV-618-LSC-TMP
                                      )
DONAL CAMPBELL,                       )
Commissioner of the Alabama           )
Department of Corrections, and the    )
ATTORNEY GENERAL OF                    )
THE STATE OF ALABAMA,                 )
                                      )
            Respondents.              )

## MEMORANDUM OPINION

This is an action by an Alabama state prisoner pursuant to 28 U.S.C.
§ 2254, challenging the constitutional validity of the capital murder
conviction he received in the Morgan County Circuit Court on January 18,
1994, for which he was sentenced to death.  The petitioner, Robin Myers,
with the assistance of an attorney, filed the instant petition for writ of
*habeas corpus* on March 25, 2004.  He is incarcerated at Holman Correctional
Facility in Atmore, Alabama.  The respondents have filed a motion to dismiss
on grounds that the petition is time-barred.  The matter is before the court

on the limited issue of whether the instant *habeas* petition is barred by the applicable one-year statute of limitation found at 28 U.S.C. § 2244(d).

## I. INTRODUCTION

The procedural history of this action in state court was fully set forth in the order entered  September 13, 2005, which referred the matter to a magistrate judge for an evidentiary hearing on the applicability of the one-year time-bar.  After discovery, briefing, an evidentiary hearing, and post-hearing briefs, the magistrate judge entered a  report and recommendation on August 24, 2007,[1] recommending that the petition be dismissed as untimely based on a determination that Myers' claim that  his execution is precluded by the Eighth Amendment and *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), because he is mentally retarded, was without basis in fact.[2]  In addition, the magistrate judge recommended that Myers be denied his request for equitable tolling of the time limitation.

---

[1]     The report and recommendation dated August 24, 2007 (Doc. 102), will be referred to hereinafter as 2007 R & R.

[2]     The most recent assessment of Myers' IQ generated a score of 84, well above the generally accepted cut-off level of 70 or below as the marker for mental retardation.

The magistrate further recommended that the claim asserted as a "newly discovered evidence claim" was without merit and could not serve to extend the time limitation.  Petitioner timely filed objections on September 10, 2007.[3]  After evaluating objections filed by petitioner, the magistrate judge vacated the portion of that report and recommendation that related to the petitioner's "newly discovered" claim based on *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and set further procedures for a full evaluation of whether the factual predicate of the *Brady* claim could not have been discovered more than one year prior to the filing of the petition for purposes of establishing a date from which the one-year limitation period began to run.  *See* 28 U.S.C. § 2244(d)(1)(D).

Myers' "newly discovered" claim is that a witness at petitioner's capital murder trial, Marzel Ewing, falsely testified that Myers sold the victim's VCR at a crack house the night of the murder, and that, after police found Ewing in a stolen car, Ewing gave police a statement identifying Myers, and police did not charge him with auto theft.  Further briefing was allowed, and a second evidentiary hearing was held before the magistrate

---

[3]        A supplement to the objections was filed on March 24, 2009.

judge to determine whether petitioner exercised the requisite diligence in asserting his newly discovered *Brady* claim.  In a report and recommendation entered March 9, 2009,[4] the magistrate judge recommended that the court find that petitioner failed to demonstrate that he exercised the requisite diligence in discovering the factual predicate of his *Brady* claim and that the claim, and the entire petition containing the claim, be dismissed as untimely filed.  Petitioner filed objections to the second report and recommendation on March 24, 2009.

Because the petitioner has filed objections to the magistrate judge's report and recommendations, the district court is required to make a *de novo* determination of those portions to which the petitioner has objected. In this case, the court has carefully considered all of the objections filed by the petitioner, and has reviewed all of the transcripts and evidence from the two extensive hearings, along with all of the briefs and evidence submitted by both of the parties.  Upon completion of that review, the court accepts

---

[4]     The report and recommendation dated March 9, 2009 (Doc. 139), will be referred to hereinafter as the 2009 R & R.

and adopts the factual findings and legal conclusions recommended by the magistrate judge in both reports and recommendations.

## A.  Equitable Tolling

The petitioner asserts that he is entitled to equitable tolling of the statute of limitation because  "significant cognitive impairments" made it "unreasonable to expect that he could read, process and act upon" the rules governing the filing of a federal *habeas* petition when his attorney failed or refused to prepare the petition for him.  (Petitioner's Supplement to Objections, Court Doc. 140-2, p. 2).    In the 2007 R & R, the magistrate judge discussed the conduct of petitioner's attorney, and found that his conduct did not constitute "cause" sufficient to excuse petitioner's untimeliness.  In addition, the magistrate judge discussed at length that petitioner had failed to demonstrate that he is mentally retarded, and that he most recently was found to have an IQ score of 84, well over the generally-accepted retardation demarcation line of 70 and below.  The magistrate judge further found that the petitioner did not suffer from such severe mental limitations that he had demonstrated he was entitled to

equitable tolling.  Petitioner objects, and asserts that rules which govern the filing of a *habeas* petition can be read and understood only by a person who has completed schooling beyond a high school education.  (Petitioner's Supplement, p. 10.)   He supports this supplemented argument with an expert analysis of the readability of 28 U.S.C. §§ 2251, 2244, 2254, and Sections 39 and 40 of the Alabama Rules of Criminal Procedure.  The court rejected the petitioner's attempt to enter evidence regarding readability at the evidentiary hearing, but accepts the supplement filed with the objections.

The evidence supplied by the petitioner is unpersuasive in compelling the court to conclude that the petitioner is entitled to the extraordinary remedy of equitable tolling.  While the magistrate judge's factual findings concede that petitioner's education and literacy is extremely limited, accepting petitioner's position[5] would require the court to find that virtually every prisoner seeking *habeas* relief would be excused from the time-bar. The court's experience with hundreds, if not thousands, of *pro se* prisoner

---

[5]      Dr. Hochhauser has declared that the legal documents at issue are written at between a 16th grade and 19th grade level, which would make them difficult for even a first-year law student to comprehend.

litigants over many years has demonstrated that most litigants, even those who can barely read or write, manage to file *habeas* petitions in accordance with the same rules that petitioner argues cannot be understood except by those with a college education or post-graduate degree.  To require a degree of literacy even at a high school level would render the application of the time-bar meaningless for a huge proportion of the prison population. While the difficulty of interpreting rules and statutes, coupled with the limited education of most prisoners, may provide ammunition in a campaign to reform the law governing the filing of *habeas* petitions, eviscerating the time limitation clearly contradicts the intention of Congress with the passage of the AEDPA.

The broad ramifications of such a finding aside, however, the magistrate judge has given detailed and specific attention to all of the petitioner's arguments in both the 2007 R & R and the 2009 R & R.  The court looked not only at the general guidelines for assessing mental capacity, but also at Myers' educational record, family situation, adolescence, work history, and experiences as a husband and father. Petitioner's assertion that the magistrate judge failed to look to Myers'

specific disabilities or at the difficulties created by his attorney's inaction is simply untrue — the magistrate judge considered all of those arguments, but decided they were insufficient under prevailing law to excuse Myers from the statutory deadline.

The court agrees with the assessment by the magistrate judge. Despite petitioner's obvious limitations in education and literacy, the fact remains that he did nothing to assure that his case continued to progress. He did not contact his Rule 32 counsel or the Alabama Court of Criminal Appeals to inquire about the status of his Rule 32 appeal.  To be entitled to equitable tolling, the petitioner personally must exercise some reasonable diligence, if nothing more than staying in touch with counsel on a regular basis.  The essence of petitioner's argument is that he is entitled to equitable tolling due to his limited education and literacy, even though he took no steps whatsoever to monitor his own case.  Certainly, diligence means doing something more than nothing.

One of the cases relied upon by petitioner in the objections, *Melson v. Allen*, 548 F.3d 993 (11th Cir. 2008), which was decided after the 2007 R & R, discusses the "misconduct and abandonment" by attorneys in the post-

conviction proceedings in state court as a basis for equitable tolling.   In *Melson*, the Eleventh Circuit Court of Appeals noted that "[a]ttorney negligence, even gross negligence, does not warrant equitable tolling." 548 F.3d at 1001.   The court explained that attorney error is particularly inapplicable to equitable tolling "in the post-conviction context where prisoners have no constitutional right to counsel." 548 F.3d at 1001.  Where Melson did not allege that his post-conviction attorneys "acted in bad faith, were dishonest, had a divided loyalty, or were mentally impaired," their gross negligence in missing deadlines and failing to timely appeal did not warrant equitable tolling.

In another case decided since the 2007 R & R, the Eleventh Circuit Court of Appeals found  that, for equitable tolling to apply, "[a] truly extreme case is required." *Holland v. Florida*,  539 F.3d 1334, 1338 (11th Cir. 2008).   The court assumed that the attorney had been "grossly negligent" in the handling of petitioner's Rule 32 petition, and had failed to inform him, in spite of repeated requests, of the status of his appeal.  538 F.3d at 1339.  Even so, the court determined that "no allegation of lawyer negligence or of failure to meet a lawyer's standard of care — in the

absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part — can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling."  539 F.3d at 1339.

On the rare and exceptional occasion that equitable tolling may be applied by the Eleventh Circuit Court of Appeals, the circumstances are significantly different than those in the instant case.  In *Downs v. Florida*, 510 F.3d 1311 (11th Cir. 2008), the appellate court vacated a district court's order dismissing a *habeas* petition as time-barred in a death penalty case, and remanded for an evidentiary hearing.  In *Downs*, the petitioner's post-conviction attorneys repeatedly lied to the petitioner, telling him that he had pending post-conviction proceedings in state court, which would have tolled the statute of limitation for his federal *habeas* petition.  During the time that counsel was lying and failing or refusing to take any action to file the federal petition, the petitioner repeatedly made phone calls to counsel, wrote letters to counsel, asked for updates, and issued demands that counsel file the appropriate pleadings.  Petitioner also offered a list of claims he wanted to pursue.  520 F.3d at 1314-16.  Counsel not only failed

to act, but also actively misled petitioner into believing that action had been taken.   In light of those facts demonstrating both petitioner's own diligence and the attorney's active misrepresentation, the court remanded for an evidentiary hearing.   520 F.3d at 1324.   The court noted: "The facts Downs alleges, if true, establish that he acted with due diligence to ensure his petition would be timely filed."   520 F.3d at 1323.   The appellate court remanded for a hearing to ascertain whether petitioner could demonstrate, in addition to his own diligence and the counsel's egregious and deceitful conduct, that the "extraordinary circumstances which impeded his timely filing were ones he was reasonably unable to control."   520 F.3d at 1324.

In this case, the petitioner has been afforded an evidentiary hearing regarding the question of whether he exercised due diligence.   The facts have clearly shown, and the magistrate judge has found, that the petitioner exercised no diligence at all.   The attorney, while failing to take any affirmative steps to assist petitioner after the Alabama Court of Criminal Appeals affirmed the denial of the Rule 32 petition, did not make any affirmative misrepresentations about the status of the case or the time for seeking federal *habeas* relief.   In this case, petitioner made no inquiry of

any type concerning the status of his case.  While petitioner argues that his mental limitations made it impossible for him to pursue his federal *habeas* petition on his own in a timely manner, the petitioner has failed to show that he was unable to make some attempt to contact his attorney, to ask for help, or to request an update.  Because an evidentiary hearing has been held and the magistrate judge has made findings of fact supported by the evidence and has correctly applied the law, petitioner's objections are without merit.  This case does not involve any of the affirmative misrepresentations present in *Downs*.  Petitioner has failed to demonstrate that he is entitled to the rare and extraordinary relief available through the doctrine of equitable tolling.  For all of the reasons discussed at great length in the 2007 R & R, the 2009 R & R, and the orders referring the matter to the magistrate judge and setting the matter for evidentiary hearing, the instant petition is time-barred and is due to be dismissed.

## B.  *Banks v. Dretke* and "Due Diligence" under § 2244(d)(1)(D)

In an order setting this case for hearing on the petitioner's "due diligence" with respect to the discovery of the factual predicate of his

"Ewing *Brady* claim," the magistrate judge rejected the petitioner's contention that the decision in *Banks v. Dretke*, 540 U.S. 668, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004), relieves petitioner of the burden of proving "due diligence" under 28 U.S.C. § 2244(d)(1)(D).  Petitioner contends that, when the prosecution has affirmatively represented that it has turned over all *Brady* materials to a defendant, *Banks v. Dretke* dispenses with the need for a *habeas* petitioner to show "due diligence," even as required by the statutory language in § 2244(d)(1)(D).   *Banks* holds that, once the prosecution represents to a criminal defendant that it has disclosed all evidence and information about the case, the defendant no longer has any obligation to exercise diligence in locating undisclosed information.  The magistrate judge distinguished *Banks*, noting that the Supreme Court explicitly observed that the case was based on pre-AEDPA standards, and that it did not call on the Court to determine the relationship between § 2244(d)(1)(D) and *Brady* claims.

The court agrees that *Banks* does not eliminate the explicit "due diligence" requirement mandated by Congress in § 2244(d)(1)(D), and that a *habeas* petitioner relying on § 2244(d)(1)(D) for the triggering date of the

one-year limitation period must show that he exercised "due diligence" in discovering the factual predicate of the recently-discovered claim.

First, the magistrate judge correctly read *Banks* as not being directly binding in this case. The Supreme Court itself clearly distinguished its decision from cases that may arise under the standards mandated by AEDPA. Also, *Banks* dealt with the application of "cause" in the doctrine of procedural default, not the statutory time limitation in § 2244(d)(1)(D). It cannot be authoritatively concluded that the decision has any application to a statutory time bar.  Thus, while *Banks* may be instructive, it is not binding authority in this case.

Next, the magistrate judge correctly applied *Melson v. Allen*, 548 F.3d 993 (11th Cir. 2008).  In *Melson*, the petitioner argued that the triggering date for the running of the one-year limitation period for filing his *habeas* petition was the date, as specified in § 2244(d)(1)(D), that he discovered "new evidence of his innocence and evidence which the prosecution allegedly suppressed in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)."  *Id.* at 999.  Despite the fact that *Melson* is

a post-*Banks* decision, *Banks* is not mentioned in it.  Further, the court of

appeals explained the due diligence requirement of § 2244(d)(1)(D), saying:

> The limitations period under § 2244(d)(1)(D) begins when the
> factual predicate of a claim could have been discovered using
> due diligence, not when it was actually discovered.  *See* §
> 2244(d)(1)(D); *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir.
> 2004).  Although we have not defined due diligence with respect
> to a § 2244(d)(1)(D) claim, we have addressed it in the analogous
> context of a second federal habeas petition which is based on
> newly discovered facts.  *See In re Boshears*, 110 F.3d 1538, 1540
> (11th Cir. 1997) (per curiam).  In the latter context, a petitioner
> must show that "'the factual predicate for the claim could not
> have been discovered previously through the exercise of due
> diligence.'"  *Id.* (quoting 28 U.S.C. § 2244(b)(2)(B)(I)).  Due
> diligence means the petitioner "must show some good reason
> why he or she was unable to discover the facts" at an earlier
> date.  *Id.*  Merely alleging that an applicant "did not actually
> know the facts underlying his or her claim does not pass the
> test." *Id.*  Instead, the inquiry focuses on "whether a reasonable
> investigation ... would have uncovered the facts the applicant
> alleges are 'newly discovered.'"  *Id.* (citation omitted).

*Id.* at 999.  The court of appeals then analyzed several allegations by Melson

that the prosecution suppressed pretrial information favorable to him.

Despite the fact that the district court had resolved the case on the basis of

procedural default, the court of appeals affirmed *on the basis of the §*

*2244(d) time bar*.  The court found that each one of the pieces of allegedly

suppressed information could have been discovered by the petitioner prior to trial if he had exercised due diligence.  Clearly, the court of appeals never considered *Banks* to have dispensed with the due diligence requirement under § 2244(d)(1)(D).  This teaches that the due diligence standard of § 2244(d)(1)(D) remains unaffected by *Banks*.

Also instructive is the case of *Frederick v. McNeil*, 300 Fed. Appx. 731 (11th Cir. 2008).  There the court of appeals remanded for the district court to conduct an inquiry into the petitioner's due diligence under § 2244(d)(1)(D) with respect to his claim that a prosecution witness perjured himself at trial at the direction of the prosecutor.  Even though this clearly would have been an instance in which the rule in *Banks* would have applied to a procedural default question, the court of appeals did not discuss *Banks* in the context of the due diligence requirement of § 2244(d)(1)(D).  If, as petitioner contends, *Banks* eliminates the need for a petitioner to show diligence under § 2244(d)(1)(D) with respect to a *Brady/Giglio* claim, the court would have had no reason to inquire into diligence.

Other circuits also have required a showing of diligence under § 2244(d)(1)(D) with respect to asserted *Brady* claims, notwithstanding *Banks*.

*See Rivas v. Fischer*, 294 Fed. Appx. 677, 2008 WL 4442463 (2nd Cir., Oct. 2, 2008); *Humphreys v. United States*, 238 Fed. Appx. 134 (6th Cir. 2007); *Wood v. Spencer*, 487 F.3d 1 (1st Cir. 2007); *Starns v. Andrews*, 524 F.3d 612 (5th Cir. 2008)(finding that petitioner exercised due diligence i discovering a *Brady* claim under § 2244(d)(1)(D)). This court has found no reported decisions in which any court of appeals has held that *Banks* eliminates the statutory due diligence stated explicitly in § 2244(d)(1)(D).

Thus, the magistrate judge was not wrong to require petitioner to bear the burden of proving his reasonable diligence in uncovering the factual predicate of his Ewing *Brady* claim. Notwithstanding the Supreme Court's decision in *Banks*, it simply does not apply to the analysis of the time-bar under AEDPA. Consequently, in order for the petitioner to benefit from the § 2244(d)(1)(D) triggering date, he must show that he acted with due diligence in uncovering the factual predicate of the claim.

## C.  "Due Diligence" and the Ewing *Brady* Claim

Next, the petitioner objects to the conclusion by the magistrate judge that petitioner did not exercise due diligence with respect to uncovering the

factual predicate of the so-called Ewing *Brady* claim.  The court disagrees, and finds that the magistrate judge's factual findings and legal conclusions are supported and correct.

It is important to understand the claim made by petitioner.  It consists of two parts.  First, petitioner contends that Ewing testified falsely at his trial, saying he saw petitioner trade a VCR to Butch Madden for crack cocaine the night of the murder (all of which Ewing has now recanted).  Second, petitioner asserts that Ewing made his inculpatory statement to police and testified at trial after police did not charge him with automobile theft after he was arrested in a stolen automobile.  In effect, petitioner contends that Ewing falsely accused[6] him because of lenient treatment from the police.

---

[6]  It must be remembered that the court has determined already that this claim is meritless.  Although it is true that Ewing now says he did not see the face of the man with the VCR the night of the murder, at least two other witnesses identified petitioner as the man with the VCR.  More important, petitioner admitted to police that he traded a VCR for crack cocaine, but said he found it under a bush in an alley.  In short, Ewing's false testimony that he saw petitioner trade the VCR is not material for *Brady* purposes because it did not affect the outcome of the trial.  Even if Ewing had never testified, the same evidence — that petitioner traded a VCR for cocaine the night of the murder — would have been heard by the jury.

The magistrate judge held a two-day hearing on this issue, and the court has reviewed the transcript of the hearing and the exhibits offered. On the court's own *de novo* consideration of the evidence, the court finds that the magistrate judge's findings of fact and conclusions of law are correct, and petitioner's objections are due to be overruled.  The critical analysis under the due diligence requirement of § 2244(d)(1)(D) is whether, with a reasonable investigation, petitioner could have discovered the factual predicate of these two parts of the claim before March 25, 2003.[7]  As the court of appeals said: "[T]he inquiry focuses on 'whether a reasonable investigation ... would have uncovered the facts the applicant alleges are "newly discovered."'"  *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008) (quoting *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997) (*per curiam*)). This requires a showing of "some good reason why he or she was unable to discover the facts."  *Id*.

The key evidence at the evidentiary hearing dealt with the post-conviction investigation conducted by Rule 32 counsel, Earle Schwarz.  It is

---

[7]  As the petition was filed on March 25, 2004, it would be untimely if petitioner could have discovered the factual predicate of the Ewing *Brady* claim more than one year earlier.

true that the testimony established that trial counsel and their investigator attempted to talk to Ewing before trial, but Ewing refused.  The next opportunity to discover the factual predicate of the claim came in the post-conviction Rule 32 proceedings.  Although Schwarz testified that he attempted to interview police, he did not remember whether he talked to Detective Boyd or, if he did, what the detective told him.  But, it is also true that, because no record was made of Ewing's arrest or interrogation by police, a records or documents search by trial counsel would not have revealed Ewing's interrogation.

After trial and conviction, petitioner came to be represented by attorney Earle Schwarz.  Despite the testimony concerning how hard it was for current counsel to locate and interview Ewing, it is undisputed that Schwarz located and interviewed Ewing on February 27, 2000, while representing petitioner in the state post-conviction Rule 32 proceedings.  He was willing to talk to Schwarz, and  Schwarz spent about an hour talking to Ewing.  During the meeting, Ewing told Schwarz that, in fact, he had not seen the face of the man with the VCR that night, and had identified petitioner because Butch Madden told him that was who traded the VCR for

crack cocaine.  Thus, certainly as early as February 2000, more than four years before the *habeas* petition was filed, petitioner's Rule 32 counsel discovered the actual facts of the first part of the Ewing *Brady* claim, that is, that Ewing testified falsely at petitioner's trial.  Ewing told Schwarz so directly.  There is no good reason why at least this part of the claim could not have been raised more than a year earlier than March 25, 2004.

Likewise, during the pendency of the Rule 32 proceedings, Schwarz received in discovery from the prosecution a chronology or timeline dealing with the murder investigation.  While it may be unclear whether Schwarz received the timeline before or after he interviewed Ewing in February 2000, it is undisputed that he had it by late July 2000, at the latest.[8]  In the timeline is written the following entry:

> SPOKE TO MARZELL EWING ABOUT AUTO THEFT AND WAS TOLD
> OF "ROCKY" BEING A SUSEPCT [sic].

Schwarz knew who Marzell Ewing was, and he knew the role Ewing played as a witness in petitioner's trial.  He knew further, by February 2000, that

---

[8]  Even petitioner concedes that the timeline was produced around July 20, 2000. *See* Petitioner's Objections dated March 24, 2009, Doc. 141, pp. 45-46.

Ewing had testified falsely at petitioner's trial.  When Schwarz met with

Ewing in February 2000, he asked Ewing whether the police has promised

him anything or coerced him to give the statement, but Ewing denied it.

Certainly, Schwarz recognized the significance of police promises or

coercion relating to the credibility of  a witness.  Upon receiving this

timeline, a reasonable investigation by Schwarz would have required him to

determine the meaning of the "auto theft" reference.  Although he had

been in touch with Ewing in February 2000, there is no evidence that

Schwarz attempted to contact him again to ask about the "auto theft."

Despite Ewing's earlier denial of favorable treatment by police during his

February 2000 interview with Schwarz, counsel made no attempt to show

Ewing the timeline to refresh his recollection.  In sum, there is no evidence

that Schwarz was unable to locate Ewing for a second interview.  It is clear

that Schwarz simply made no further attempt to locate him after the

February 2000 meeting.  There also is no evidence that Schwarz was

thwarted in any attempt to speak to the Decatur police about the "auto

theft" reference to Ewing.[9]   Petitioner simply has failed to prove that Schwarz made a reasonable attempt to investigate the circumstances of Ewing's role as a witness in petitioner's case, even though he knew Ewing testified falsely at trial and that he had been questioned about an auto theft.  These are the very facts that comprise the claim now being advanced by petitioner, and they were known to Rule 32 counsel no later than mid-2000.

The court disagrees with petitioner's contention that the magistrate judge required too stringent a standard for assessing Schwarz's investigation of this matter.  Due diligence requires a "reasonable" investigation, not the best investigation.   To prove the reasonableness of an investigation, petitioner must show some "good reason" why he could not have discovered the facts earlier than he did.  After being told by Ewing that his trial testimony was false, and after receiving the timeline indicating that Ewing had been questioned about an auto theft, a reasonable investigation by counsel required that he attempt to clarify the auto theft reference and

---

[9]  To be fair, Schwarz testified that he talked to police about the case, but there is no evidence or testimony about the contents of his discussions, as he did not recall them.

whether it had any relationship to Ewings' trial testimony.  Because there is no evidence that he did so, and there is no evidence of a "good reason" why that information could not have been found,[10] the due diligence requirement of § 2244(d)(1)(D) has not been met.  Petitioner's objections in this regard are overruled.

The court agrees that petitioner has failed to show due diligence with respect to the so-called Ewing *Brady* claim.  By the middle of 2000, petitioner's Rule 32 counsel was aware both that Ewing testified falsely at petitioner's trial *and* that he had been questioned about an auto theft during the murder investigation.  Absent some evidence that Ewing could not be located or would have refused to talk to Schwarz a second time, there is no reason to believe that the circumstances surrounding Ewing's statement to police and his later testimony could not have been discovered soon after counsel received the timeline in July 2000.  Because the evidence

---

[10] Petitioner makes much of the difficulty Investigator Johnson had locating Ewing in the spring of 2004, but this says little about Schwarz's efforts to locate Ewing four years earlier, in 2000.  Schwarz successfully located Ewing and interviewed him in February 2000, and without some evidence about difficulty locating him in the later summer or early fall of 2000, the problems encountered in the spring of 2004 do not establish a "good reason" why Schwarz failed to talk to Ewing after receiving the timeline.

does not indicate that Ewing refused to be interviewed — indeed, Schwarz found him willing to talk — petitioner cannot show that due diligence would not have revealed the factual predicate of this claim several years before the *habeas* petition was filed in March 2004.  Consequently, the triggering date for the running of the one-year limitation period remains either the date the conviction became final or, at the latest under § 2244(d)(1)(D), sometime in the late summer or early fall of 2000, when a diligent investigation would have revealed the factual predicate of the Ewing *Brady* claim.  Under either circumstance, the petition was untimely filed on March 25, 2004.

## Conclusion

In the court's order dated September 13, 2005 (Doc. 39), referring this case to the magistrate judge for an evidentiary hearing on three issues, the court explained that, except as it may be saved by one of the three referred issues, the petition in this case is time-barred by 28 U.S.C. § 2244(d)(1). The magistrate judge has now conducted two evidentiary hearings and filed two reports and recommendations, finding that none of the three issues

referred can excuse the untimeliness of the petition.  As explained in the two reports and recommendations, and herein above, petitioner's claim that he is exempt from execution under *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), is unsupported by the evidence, in that he simply does not qualify as mentally retarded.  Likewise, petitioner is not entitled to equitable tolling of the statute of limitation because the failures of his Rule 32 counsel did not rise to the level of "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part," necessary to be extraordinary circumstances beyond petitioner's control. Also, petitioner himself was not diligent in seeking to assure that his case continued to progress.  Finally, petitioner's argument that the triggering date for the one-year limitation period under § 2244(d)(1)(D) occurred only in the spring of 2004, upon the discovery of his Ewing *Brady* claim, also fails under the evidence.  Petitioner's Rule 32 counsel was aware of the essential facts constituting the claim almost four years before the petition was filed.

Thus, for the reasons covered in Doc. 39, this Order, and the two reports and recommendations by the magistrate judge, the court concludes that the petition for writ of *habeas corpus* filed March 25, 2004, is time

barred and due to be dismissed with prejudice.  A separate order will be

entered.

Done this 3rd day of April 2009.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

**153671**